UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------X
YVONNE and CHARLES HARVEY,

                Plaintiffs,

   - against -

HOME SAVERS CONSULTING CORP.,
GARTH CELESTINE, PHIL SIMON,
OPHELIA RAY, KRISHNA MAHARAJ,
COURTNEY CALLENDER, BLACKACRE
TITLE AGENCY CORP., NEW YORK
MORTGAGE CO. LLC, MARVIN BLAKELY,
RMS RESIDENTIAL PROPERTIES LLC, et al.,

                Defendants
--------------------------------------------------X
GOLD, S., *United States Magistrate Judge*:

REPORT AND
RECOMMENDATION
07-CV-2645 (JG)

## INTRODUCTION

Pending before the Court is plaintiffs' motion for attorney's fees and costs. United States District Judge John Gleeson referred this motion to me for a Report and Recommendation as part of plaintiffs' motion for entry of default judgment. Plaintiffs, Yvonne and Charles Harvey, seek an award of attorney's fees and costs against defendants, the Home Savers Consulting Corporation ("Home Savers"), Garth Celestine, Phil Simon, and Marvin Blakely (collectively "the defaulting defendants"), in the amount of $219,138.24. For the following reasons, I respectfully recommend that plaintiffs be awarded $179,025.43 in fees and costs.

## BACKGROUND

On March 3, 2011, I issued a report recommending entry of judgment against the defaulting defendants, jointly and severally, in the amount of $229,763.40, together with interest, attorney's fees and costs. Docket Entry 163. The facts and legal issues involved in this case are

1

set forth in detail in that report and are not reiterated at length here. Briefly, plaintiffs allege that they were the victims of a fraudulent foreclosure rescue scheme that resulted in their loss of title to and significant equity in their home. Plaintiffs brought numerous claims against multiple defendants seeking damages and the restoration of their title. During the course of litigation, plaintiffs entered into settlement agreements with all defendants except for those now in default.[1] *See* Docket Entries 77, 128, 139, 143, 165. On May 27, 2010, plaintiffs renewed their motion for entry of a default judgment against the remaining defendants, which had been deferred until all of the defendants' liability could be conclusively adjudicated. Docket Entries 55, 147.

On March 23, 2011, Judge Gleeson adopted my report and recommendation, and (1) granted plaintiffs' motion for default judgment against Home Savers, Simon, and Celestine for violations of the Civil Rights Acts, 42 U.S.C. §§ 1981, 1982 and against all the defaulting defendants for violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, and common law fraud; (2) dismissed plaintiffs' claims pursuant to the Truth in Lending Act ("TILA") and the Home Ownership and Equity Act ("HOEPA"), 15 U.S.C. § 1601, *et seq.*; (3) dismissed plaintiffs' claims pursuant to the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 *et seq.*; and (4) held the defaulting defendants jointly and severally liable for damages in the amount of $229,763.40.[2] My report also recommended that plaintiffs be permitted to seek an award of reasonable attorney's fees and costs. Plaintiffs have

---

[1] In addition to the defaulting defendants, plaintiffs sued the New York Mortgage Corporation, LLC ("New York Mortgage"), RMS Residential Properties, LLC ("RMS"), the Blackacre Title Agency Corporation ("Blackacre"), Indymac Bank, F.S.B. ("Indymac"), (collectively "the institutional defendants"), Ophelia Ray, Krishna Maharaj, and Courtney Callender.

[2] Because plaintiffs' were entitled to damages under RICO, the Civil Rights Acts, and fraud, the Court did not reach plaintiffs' claims under the Fair Housing Act, 42 U.S.C. § 3601, *et seq.*, civil conspiracy, conversion, or the New York Deceptive Practices Act, N.Y. Gen. Bus. Law § 349.

now submitted a motion specifically addressed to attorney's fees. Docket Entry 170. Defaulting defendants have not submitted any opposition to the motion.

## DISCUSSION

Throughout this litigation, plaintiffs have been represented by attorneys from both Staten Island Legal Services ("SILS"), a non-profit organization located in Staten Island, New York, that provides free legal assistance to low-income individuals, and Emery Celli Brinkerhoff & Abady LLP ("ECBA"), a private litigation firm located in Manhattan, New York that specializes in complex federal litigation. Saylor Decl. ¶¶ 1-2, Docket Entry 171; Becker Decl. ¶¶ 2-3, 19; Docket Entry 172; Berk Decl. ¶ 8, Docket Entry 173. Initially, plaintiffs were represented solely by SILS. Becker Decl. ¶¶ 5-9. Subsequently, however, SILS determined that it did not have the resources to represent plaintiffs in a case of this size and complexity, and ECBA was retained as co-counsel. *Id.* ¶¶ at 9-11, 16. Plaintiffs seek fees only for the hours expended by ECBA attorneys. *Id.* at ¶ 24.[3]

My earlier report recommended imposing liability on Home Savers, Simon, and Celestine under 42 U.S.C. §§ 1981 and 1982, and on all the defaulting defendants, including Blakely, under RICO. Accordingly, plaintiffs are entitled to an award of attorney's fees and costs against Home Savers, Simon, and Celestine pursuant to the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988, and against all defaulting defendants pursuant to RICO's remedial provision, 18 U.S.C. § 1964(c). In determining the amount of fees under either statute, a court's analysis is "governed by the same standards which prevail in other types of equally complex Federal litigation." *Hensley v. Eckerhart*, 461 U.S. 424, 430 n.4 (1983) (internal quotations and

---

[3] At the time SILS initiated this case federal regulations prohibited SILS from seeking legal fees. Becker Decl. ¶ 24. SILS therefore did not include a claim for its own legal fees in the complaint and does not seek them in the instant fee application. *Id.*

alterations omitted). In the Second Circuit, courts determine a "presumptively reasonable fee" award by calculating the product of hours reasonably expended by a reasonable hourly rate, while bearing in mind "all of the case-specific variables that . . . courts have identified as relevant." *Simmons v. New York City Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009). *See also Arbor Hill Concerned Citizens Neighborhood Assoc. v. County of Albany*, 522 F. 3d 182 (2d Cir. 2008); *McDonald v. Pension Plan of the NYSA-ILA Pension Trust Fund*, 450 F.3d 91, 96 (2d Cir. 2006); *Chambless v. Masters, Mates & Pilots Pension Plan*, 885 F.2d 1053, 1058 (2d Cir. 1989). In addition, all requests for attorney's fees in the Second Circuit must comply with *New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983), which requires that contemporaneous time records be submitted with all fee applications. *Scott v. City of New York*, 643 F.3d 56, 58-59 (2d Cir. May 24, 2011)

A. The Reasonable Hourly Rate

"The reasonable hourly rate is the rate a paying client would be willing to pay." *Arbor Hill*, 522 F.3d at 190. In making this determination courts consider factors such as the time and labor required, the novelty and difficulty of the issues, the level of skill needed to perform the legal services competently, the experience, reputation, and ability of the attorneys in the case, and awards in similar cases. *See Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir. 1974); *Weingarten v. Optima Commc'ns Sys., Inc.*, 544 F. Supp. 2d 193, 196 (S.D.N.Y. 2008). The Second Circuit has instructed that "district courts should award fees just high enough to attract competent counsel." *Simmons*, 575 F.3d at 174-75 (internal quotations omitted). The hourly rate, then, should be in line with rates "prevailing in the community for similar services by lawyers of reasonable comparable skill, experience and reputation." *Sugarman v. Vill. of Chester*, 213 F. Supp. 2d 304, 309 (S.D.N.Y. 2002) (quoting *Blum v. Stenson*, 465 U.S. 886, 895

4

n.11 (1984)). In the Second Circuit, there is a rebuttable presumption that the relevant community is the "district in which the reviewing court sits." *Simmons*, 575 F.3d at 174 (internal quotations omitted). A court may take judicial notice of the prevailing market rates in a given district but must also evaluate any evidence of the prevailing rates proffered by the parties. *Farbotko v. Clinton County of New York*, 433 F.3d 204, 209 (2d Cir. 2005).

Plaintiffs' fee application seeks legal fees for five attorneys at the following rates: 1) Illann Maazel, a partner at ECBA with twenty-four years of legal experiences at $450 per hour; 2) Elizabeth Saylor, another partner at ECBA with ten years of experience at $400 per hour; 3) Elora Mukherjee, an associate at ECBA with six years of experience at $325 per hour; 4) Eisha Jain, an associate at ECBA with four years of experience at $300 per hour and 5) Samuel Shapiro, an associate at ECBA with three years of experience at $300 per hour. Saylor Decl. ¶ 22, Exs C-G, Docket Entries 171-3-171-7. In addition, plaintiffs seek fees for the services of six ECBA paralegals, all at $125 per hour. Saylor Decl. ¶ 22. These rates, especially as they relate to ECBA's associates, are higher than those generally considered reasonable for similar services in the Eastern District. *See Todaro v. Siegel Fenchel & Peddy P.C.*, 697 F. Supp. 2d 395, 399-400 (E.D.N.Y. 2010) (in a Title VII case, awarding $400 an hour for a partner with seventeen years of experience but reducing associates' rates, noting that "[c]ourts within the E.D.N.Y typically award between $100 and $150 an hour for junior associates, and between $200 and $250 an hour for senior associates"); *Olsen v. County of Nassau*, 2010 WL 376642, at *3 (E.D.N.Y. Jan. 26, 2010) (noting that the range of appropriate billing rates in the Eastern District "is $200-$375 per hour for partners and $100-$295 per hour for associates") (internal quotations omitted).

*i. The Local Forum Presumption*

Plaintiffs argue that the Court should look to the somewhat higher prevailing market rates in the Southern District of New York in setting the reasonable hourly rate. A fee applicant may overcome the local forum presumption by establishing "that a reasonable client would have selected out-of-district counsel because doing so would likely (not just possibly) produce a substantially better net result." *Simmons*, 575 F.3d at 175. To satisfy this standard, the applicant "must make a particularized showing . . . predicated on experience-based, objective factors." *Id.* at 176. "Among the ways an applicant may make such a showing is by establishing that local counsel possessing requisite experience were unwilling or unable to take the case." *Id.* For the following reasons, I find that plaintiffs have adequately established their entitlement to out-of-district rates.

Plaintiffs were initially represented solely by attorneys from SILS. Becker Decl. ¶¶ 5-9. As plaintiffs' case progressed, however, SILS determined that it had neither the resources nor the experience to represent plaintiffs adequately in a complex federal litigation like this one. *Id.* at ¶¶ 9-11. As a result, SILS sought assistance in finding a private law firm to serve as co-counsel from the city-wide Pro Bono Coordinators Committee of New York Lawyers for the Public Interest ("the Pro Bono Committee"). *Id.* at ¶ 13; Berk Decl. ¶ 7.

The Pro Bono Committee contacted more than one hundred law firms in New York. Berk Decl. ¶ 8. Most firms with sufficient resources, however, were unable to represent plaintiffs due to potential conflicts of interest. Berk Decl. ¶ 9; Becker Decl. ¶ 13-14. After a lengthy search, plaintiffs and SILS accepted ECBA's offer to serve as co-counsel because of the firm's resources, its recognized reputation litigating complex federal cases, its intention to assign

6

experienced partners to the case, and its willingness to take plaintiffs' case on a contingency basis. Berk Decl. ¶¶ 8, 10; Becker Decl. ¶¶ 15, 18-20.

Given this history, I have no reason to doubt the assertion of Margaret Becker, plaintiffs' lead attorney at SILS, that plaintiffs would have been unable to find a firm to act as co-counsel with sufficient resources and experience had they limited their search to law firms based in the Eastern District. Becker Decl. ¶ 19. According to Ms. Becker, SILS continues to handle predatory lending cases similar to this one, but has yet to find a law firm outside of the Southern District that has the necessary resources and experience to act as co-counsel, and is willing to do so. *Id.* at ¶ 20. Given SILS' limited resources, plaintiffs' substantial but unsuccessful efforts in finding an adequate Eastern District firm to act as co-counsel, and the results that ECBA helped attain, plaintiffs have made a sufficiently particularized showing that it was reasonable to select out-of-district counsel in this case. Accordingly, I will consider plaintiffs' fee application in light of the rates that prevail in the Southern District of New York.

*ii. Reasonableness of ECBA's Requested Rates in the Southern District of New York*

With the exception of ECBA's junior associate and paralegal rates, the hourly rates plaintiffs' attorneys seek are within the range found reasonable by courts in the Southern District for attorneys with similar backgrounds and experience. *See Serin v. N. Leasing Sys., Inc.*, 2011 WL 1467560, at *11 (S.D.N.Y. Apr. 19, 2011) (awarding fees pursuant to RICO and holding that $450 per hour was a reasonable rate for a partner in a mid-size Manhattan law firm); *Germain v. County of Suffolk*, 672 F. Supp. 2d 319, 325 (E.D.N.Y. 2009) (finding that courts in the Southern District have awarded fees for experienced partners at rates ranging from $425 to $600); *Rozell v. Ross-Holst*, 576 F. Supp. 2d 527, 545-46 (S.D.N.Y 2008) (in a Title VII case, awarding partners with over thirty years of experience an hourly rate of $600, senior associates with seven

7

years of experience at $350 per hour, and junior associates with less than four years of experience at $250 per hour). In approving the hourly rates sought for ECBA's partners and senior associates, I have taken into account the excellent reputation of ECBA among attorneys specializing in civil rights cases (*See* Brustin Decl. ¶ 5, Docket Entry 174; Scanlon Decl. ¶ 6, Docket Entry 175; Swartz Decl. ¶ 4, Docket Entry 176), the variety of complex statutory claims raised in this case, and the degree of success achieved by counsel on plaintiffs' behalf.

However, the rates sought for attorneys Jain and Shapiro, two ECBA associates with less than four years of litigation experience, are higher than those awarded for lawyers with comparable backgrounds. *See Vilku v. City of New York*, 2009 WL 1851019, at *9 (E.D.N.Y. June 26, 2009) (noting that, in the Southern District, rates for associates in mid-size firms specializing in civil rights and employment law range from $350 to $250 an hour depending on experience and reducing the rate of an ECBA associate with three and a half years of legal experience from $325 to $275), *vacated on other grounds* 372 Fed. Appx. 222 (2d Cir. 2010); *Wise v. Kelly*, 620 F. Supp. 2d 435, 444-47 (S.D.N.Y. 2008) (taking judicial notice of ECBA's superior reputation but nevertheless reducing the requested rate of an ECBA associate with seven years of experience from $325 to $300 per hour).

Plaintiffs' direct evidence does not convince me that the rates in the Southern District have changed since the cases cited above were decided. Plaintiffs have submitted the affidavits of Justin M. Swartz, a partner at the law firm of Outten & Golden LLP ("O&G") and Vera Scanlon, a partner at the law firm of Beldock Levine & Hoffman LLP ("BL&H"). Docket Entries 175-176. While Scanlon states that associate rates at BL&H range from $325 to $425, Swartz states that associate rates at O&G begin at $225 and end at $400. Scanlon Aff. ¶ 8; Swartz Aff. ¶ 12. This conflicting evidence does not cut strongly in favor of an increase in the prevailing rates.

Moreover, the billing records submitted by counsel indicate that Jain and Shapiro's responsibilities were limited to preparing plaintiffs' pending fee application. Saylor Decl. ¶ 18. This work did not require special expertise or unique skills that might warrant an upward departure from the rates generally applied. Accordingly, I conclude that a reduction in both Jain and Shapiro's requested rates from $300 to $275 per hour is appropriate in this case. *See L.V. v. New York Dep't of Educ.*, 700 F. Supp. 2d 510, 520 (S.D.N.Y. 2010) (reducing associates' rates where the associates were "less involved" and "took on less responsibility" than other attorneys in the case).

I also recommend that ECBA's paralegal rates be reduced. Plaintiffs seek $125 per hour for the work of six different paralegals who worked on this case. In the Southern District, paralegal rates range from $50 to $150 depending on experience. *Spalluto v. Trump Int'l Hotel & Tower*, 2008 WL 4525372, at *14 (S.D.N.Y. Oct. 2, 2008). Plaintiffs, however, have failed to offer any information about the backgrounds and levels of experience of the paralegals for whom they seek a fee award. Without this information, the court is unable to determine the reasonableness of plaintiffs' requested rates. Therefore, I recommend that these six ECBA paralegals be compensated at a reduced rate of $75 per hour. *See id.* (reducing paralegal rates from $115 to $75 due to lack of evidence regarding experience).

Accordingly, I respectfully recommend that plaintiffs' counsel be awarded fees at the following rates:

| Attorney | Rate |
|---|---|
| Ilann Maazel | $450/hr |
| Elizabeth Saylor | $400/hr |
| Elora Mukherjee | $325/hr |
| Eisha Jain | $275/hr |
| Samual Shapiro | $275/hr |
| Paralegals | $75/hr |

B. The Number of Hours Expended on the Litigation

Plaintiffs seek a total of 577.85 attorney hours and 44.2 paralegal hours in their application. Pl.'s Mem at 23, Docket Entry 177; Saylor Decl. ¶ 22. After reviewing plaintiffs' billing records, I find that the time spent on individual tasks to be reasonable. Although the number of hours is fairly large in the abstract, this case, as my earlier report demonstrated, raised a fair number of complex legal issues. Moreover, as indicated on the docket sheet, there were several court appearances and substantial efforts were devoted to mediation. I therefore find that the number of hours for which fees are sought to be reasonable.

Many of plaintiffs' billing entries, however, reference defendants who settled earlier in the litigation and are not now in default. Plaintiffs argue that, because all of the defendants produced a single indivisible injury, the remaining defaulting defendants should be held jointly and severally liable for the entirety of plaintiffs' attorney's fees and costs. Plaintiffs advocate apportioning responsibility for their fees by subtracting the $20,000 amount they have already received as a result of settlements[4] and holding the defaulting defendants liable for the entirety of the remaining sum.

While it is true that a district court has discretion to apportion a fee award based upon factors such as relative culpability, "it must do so consistently with the preexisting background of substantive liability rules." *Koster v. Perales*, 903 F.2d 131, 139 (2d Cir. 1990), *abrogated on other grounds by Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598 (2001). "There is no cause of action against a defendant for fees absent that defendant's liability for relief on the merits." *Kentucky v. Graham*, 473 U.S. 159, 170 (1985).

---

[4] As discussed above, plaintiffs negotiated settlement agreements with all defendants except for those now in default. As a result of those settlements, plaintiffs received $20,000 in cash, regained title to their house, and secured a reduction in their mortgage principle.

10

The default judgments that plaintiffs secured in this case entitle them to attorney's fees by virtue of the fee shifting provisions of the Civil Rights Act and RICO statutes. Because the institutional defendants were not named in those claims, the defaulting defendants cannot be held jointly and severally liable with the institutional defendants for attorney's fees.

Nevertheless, as the Supreme Court has recognized, where a plaintiff's claims arise from a common core of facts, "[m]uch of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide hours on a claim-by-claim basis." *Hensley*, 461 U.S. at 435. A party who brings factually related claims will generally need to perform similar legal research and "undertake much of the same factual investigation" as a party who brings only one claim based upon the same nucleus of facts. *See Todaro*, 697 F. Supp. 2d at 401. Here, each of plaintiffs' claims arose out of the defaulting defendant's fraudulent foreclosure rescue scheme. To litigate their Civil Rights and RICO claims effectively, plaintiffs were required to investigate the facts underlying the fraudulent transaction, the respective involvement of each defendant in that transaction, and the consequences, legal and factual, that the transaction engendered vis-à-vis the institutional defendants. Much of this investigation would have been required had plaintiffs brought claims only against the defaulting defendants.

Further, and as set out in Ms. Saylor's declaration, plaintiffs engaged in lengthy multi-party mediation sessions that included both the settling defendants and most of the defaulting defendants. Saylor Decl. ¶¶ 10-13. During these sessions the attorney representing Ray as well as defaulting defendants Simon and Home Savers made efforts to negotiate a settlement on behalf of all defaulting defendants. *Id.* at ¶ 13. In preparing for these negotiations, plaintiffs performed legal research necessary to set out their mediation positions, and relied on this work to further the litigation against the defaulting defendants. *Id.* at ¶¶ 10-12. Since much of the time

11

plaintiffs' counsel spent with respect to these issues related to all of the defendants and furthered the litigation as a whole, I recommend that plaintiffs be compensated for some, though not all, of those hours. *See Todaro*, 697 F. Supp. 2d at 401 (awarding 70% of a fee application where factually related claims were not coextensive but nonetheless shared significant overlap).[5]

I also decline to utilize plaintiffs' method of apportioning the fees. As discussed above, plaintiffs apportion their fees by deducting the $20,000 received in settlements with other defendants from the amount calculated in their application, and seek to hold the defaulting defendants jointly and severally liable for the entirety of the remaining amount they seek to recover. However, it is not at all clear how plaintiffs arrived at the $20,000 figure, or whether it is intended to approximate the proportion of fees attributable to legal services provided in connection with plaintiffs' claims against the settling defendants. Moreover, courts are reluctant to require a non-settling defendant to bear the full burden of attorney's fees where co-defendants have settled. *See e.g.*, *Refractory Serv. Co. v. Shaw Refectories*, 2007 WL 118780, at *4-5 (N.D. Ind. Jan. 9, 2007); *Sugarman v. Vill. of Chester*, 213 F. Supp. 2d 304, 312-13 (S.D.N.Y. 2002). Holding defaulting defendants liable for the entirety of the fees incurred in a litigation, or a disproportionate amount of fees, would permit some defendants to settle their case at a discount while requiring the defaulting defendants to subsidize the difference. *See Sugarman*, 213 F.

---

[5] In addition, I note that plaintiffs sued all defendants except for RMS under the New York Deceptive Practices Act, N.Y. Gen. Bus. Law § 349, which provides for a discretionary award of attorneys fees to a prevailing party. Plaintiffs settled these claims with all of the defendants except for those now in default. New York law is not clear as to whether a settling plaintiff is entitled to fees under § 349. *See Serin*, 2011 WL 1467560, at *4. One federal district court applying New York law has allowed fees in a suit decided through arbitration where the award was premised on § 349 liability. *See id.* at *4 n.1 (citing *Domon v. Warsitz*, 1993 WL 152079, at *3) (W.D.N.Y. Apr. 26, 1993)). While the Court did not reach plaintiffs § 349 claim against the defaulting defendants, "[l]itigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee." *Hensley*, 461 U.S. at 435. Nevertheless, even if the Court were to find that plaintiffs were entitled to fees by virtue of § 349, the result would be the same. Plaintiffs would be entitled to fees for some, though not all, of the time spent litigating claims against the settled defendants because many of the claims they pressed do not entitle them to statutory fees.

Supp. 2d at 313. Such an apportionment method overlooks the fact that plaintiffs should, and likely did, factor their attorney's fees into the settlement agreements they reached with the settling defendants. *See Refractory Serv. Co.*, 2007 WL 118780, at *5.

Given the foregoing considerations, I recommend that a 25% reduction be applied to plaintiffs' total fee request. *See New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1146 (2d Cir.1983) (approving of across-the-board "percentage cuts as a practical means of trimming fat from a fee application"). I apply this reduction without utilizing the $20,000 deduction made by plaintiffs in their fee application. Accordingly, I respectfully recommend that plaintiffs be awarded $170,363.44 in attorney's fees, calculated as follows:

| Attorney | Rate | Hours Requested[6] | Total Prior to Reduction | Total After Reduction |
| --- | --- | --- | --- | --- |
| Ilann Maazel | $450/hr | 136.8 | $61,560 | $46,170 |
| Elizabeth Saylor | $400/hr | 282.2 | $112,880 | $84,660 |
| Elora Mukherjee | $325/hr | 114.25 | $37,131.25 | $27,848.44 |
| Eisha Jain | $275/hr | 6.8 | $1,870 | $1,402.50 |
| Samual Shapiro | $275/hr | 37.8 | $10,395 | $7,796.25 |
| Paralegals | $75/hr | 44.2 | $3,315 | $2,486.25 |
| | | | **TOTAL** | **$170,363.44** |

C. Costs

Plaintiffs also seek $8,661.99 for the costs they incurred in prosecuting this litigation. Saylor Decl. ¶ 28. Plaintiffs are entitled to recover the costs of their suit under both the RICO and Civil Rights statutes. *See LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998); *Stochastic Decisions, Inc. v. DiDomenico*, 995 F.2d 1158, 1167 (2d Cir. 1993). I have reviewed the itemized accounting of plaintiffs' expenses and find them to be both reasonable and the type of "out of pocket disbursements which are ordinarily charged to clients." *Luessenhop v. Clinton*

---

[6] *See* Saylor Decl. ¶ 22.

*County*, 558 F. Supp. 2d 247, 271 (N.D.N.Y. 2008). Accordingly, I recommend that plaintiffs be awarded all of these requested costs.

## CONCLUSION

For the reasons set forth above, I respectfully recommend that plaintiffs be awarded a total of $179,025.43 in attorney's fees and costs against defendants Home Savers, Celestine, Simon, and Blakely, jointly and severally. Any objections to the recommendations made in this Report must be filed within fourteen days of this Report and Recommendation and, in any event, on or before August 29, 2011. Failure to file timely objections may waive the right to appeal the District Court's Order. See 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a); *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989). Plaintiffs are hereby directed to serve a copy of this Report upon defendants at their last known address, and to file proof of service with the Court.

/s/
**STEVEN M. GOLD**
**United States Magistrate Judge**

Brooklyn, New York
August 12, 2011

*U:\BW 2010\Home Savers\Attorney's Fees\Home Savers Fees - Final.doc*